UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| VERONICA ELPHAGE, wife of/and ERNEST ELPHAGE, Individually, and on behalf and as guardians of their minor children, BRITTANY MORGAN, DAVINESHA MORGAN, AND E'SEAN ELPHAGE; et al | CIVIL ACTION NO. 10-00358 |
| VERSUS | JUDGE FRANK J. POLOZOLA |
| SID J. GAUTREAUX, IN HIS CAPACITY AS SHERIFF OF EAST BATON ROUGE PARISH, GEORGE O'CONNOR, JR. and DEPUTIES JOHN DOE | MAGISTRATE JUDGE DOCIA L. DALBY |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

Defendants, Sid J. Gautreaux In His Capacity as Sheriff of East Baton Rouge Parish, and Deputy George O'Connor, Jr. have filed the instant Motion for Summary Judgment contending that as a matter of law, they are entitled to a ruling dismissing plaintiffs' claims against them. However, because defendants cannot negate the presence of genuine issues of material facts, their Motion for Summary Judgment must fail.

## FACTUAL BACKGROUND

On Mother's Day, May 10, 2009, plaintiffs and their children were attending a family gathering at the home of plaintiff, Diana Morgan, in the 1900 block of Helm Drive in East Baton Rouge Parish, State of Louisiana. At approximately 10:00 p.m., as the Mother's Day gathering was coming to an end, several marked police cars advanced towards the family gathering at a high rate of speed. Plaintiffs and their children were then confronted by numerous Sheriff's deputies from the East Baton Rouge Sheriff's Office.

Plaintiff, Cardell White, Sr., was grabbed and violently thrown to the concrete ground by some of the deputies. While lying on the ground, plaintiff, Cardell White, Sr., was physically restrained, battered, threatened with police dog(s), and shotgun(s) and verbally assaulted by the deputies. Without provocation, the Sheriff's deputies sprayed an abundance of chemical(s) believed to be mace and/or pepper spray on Plaintiffs and their minor children herein named, some of whom were infants at the time.

Neither plaintiffs nor their minor children presented any threat or interference to the Sheriff's deputies. Yet, the deputies intentionally and/or maliciously sprayed plaintiffs and their minor children with chemical(s) believed to be mace and/or pepper spray. Plaintiff, Ernest Elphage, called 911 out of fear and concern for the children that had been sprayed with the chemical(s) and an ambulance and emergency services arrived shortly thereafter.

Plaintiff, Cardell White, Sr., was placed into a police car in handcuffs, but was eventually released without an arrest after it was realized that a mistake(s) had been made. The foregoing incidents occurred in public, where others were able to view and

hear the implications and accusations made against plaintiff, Veronica Elphage and Cardell White, Sr.

As this was occurring, plaintiff, Veronica Elphage, had her camera and began recording the incident. When one or more of the deputies noticed that plaintiff, Veronica Elphage, had a camera and was recording the event, they apprehended and handcuffed her, and seized the camera from her. Plaintiff, Veronica Elphage, was then detained and arrested by Deputy O'Connor and/or one or more of the Sheriff's deputies. When Veronica Elphage's camera was finally returned to her, it was returned in broken condition with the memory card removed and missing.

## PROCEDURAL BACKGROUND

Plaintiffs filed their Petition for Damages, verified by plaintiffs Veronica Elphage and Cardell White, Sr., in the 19th Judicial District Court for the Parish of East Baton Rouge. Plaintiffs alleged that defendants violated 42 U.S.C. §§ 1983, 1985 and 1986, as well as the Fourth, Fifth and/or Fourteenth Amendments to the United States Constitution. Plaintiffs further alleged that defendants are additionally liable to plaintiffs pursuant to Louisiana law, including, but not limited to the Louisiana Civil Code Articles 2315, 2315.6 and 2316, through the commission of negligence, assault, battery, and the negligent and intentional tort, and defamation. The case was removed to this Court.

Defendants have now filed a Motion for Summary Judgment arguing that there no genuine issues of material fact. The parties have engaged in discovery in this case and several depositions have been taken. The defendants contend that only one deputy used the pepper spray and that that use was in accordance with proper procedure. The plaintiffs contend that multiple deputies sprayed them.

Defendants admit that Deputy Brian Farrell deployed his pepper spray. See Defendants' Memorandum in Support at page 3. In fact, he testified that he was the only deputy who used the pepper spray on the crowd. See defendant's Exhibit B, page 23-24. However, plaintiffs contend that more than one deputy sprayed the crowd and in an excessive manner. Plaintiff, Ernest Elphage, testified in his deposition:

```
Q.   Do you know which deputy sprayed?

A.   I can't recall. Actually, it was more than one
     deputy actually spraying at the time.

Q.   More than one?

A.   Yes.

Q.   How many?

A.   At me, directly at me, it was about three.

Q.   So three different deputies were spraying pepper
     spray toward you?

A.   Toward me but there were other deputies spraying
     pepper spray.
```

See Deposition of Ernest Elphage attached hereto as Exhibit "1" at page 26.

However, despite depositions and written discovery, plaintiffs have been unable to identify other deputies who deployed the spray. The key piece of evidence in this case is missing and has been missing since Veronica Elphage's arrest. That evidence was contained on the memory card of the camera that Veronica Elphage had and with which she filmed the events made the basis of this litigation. The memory card was missing from the camera when the Sheriff's Office returned it to Veronica Elphage.

In his deposition, Deputy Brian Farrell testified as follows:

```
Q.   Did you observe anybody with a camera at the
     scene?
```

> A.  I believe there was a black female out there with a camera and she's taking pictures and making a video or something.

See Deposition of Deputy Brian Farrell attached to defendants' memorandum as Exhibit "3" at p. 32, lines 19-23.

In his deposition, Ernest Elphage testified:

> Q.  Ms. Johnston also asked you about Veronica arriving on the scene. At any time that you viewed her did she have a camera?
>
> A.  Yes, she actually had her camera in her hand. When she was walking up the street, she was recording what was going on.
>
> Q.  And what eventually happened with the camera?
>
> A.  They took the camera from her. I think that's the initial reason they wanted to take her to jail, because they -- she recorded everything that was going on.
>
> Q.  When was the first time you noticed Veronica with a camera?
>
> A.  Actually, when she was coming up the street, she seen all the commotion, and she just started recording it, and I guess when she noticed that they was coming by her sister's house, she just started walking up the street with the camera recording.
>
> Q.  What do you recall she recorded with the camera?
>
> A.  Everything. She recorded when they first got out of the car.
>
> Q.  Did she record anybody being sprayed?
>
> A.  Yes, she recorded everyone -- all the kids being sprayed, me being sprayed. I'm pretty sure that it had -- when they had the dog and the shotgun on Cardell, all of that was on videotape.

> Q. And I may have asked you this already, but what happened to the camera?
>
> A. I'm not sure. They took the camera from her, and they put her in handcuffs. When we got the property back, it was broke.
>
> Q. Do you know who took the camera from her?
>
> A. One of the deputies that was putting her in handcuffs, one of them took the camera from her, and the other one handcuffed her. They just went straight to the car with it.
>
> Q. With the camera?
>
> A. Yes.
>
> Q. So the deputies didn't leave the camera with anybody else?
>
> A. No.
>
> Q. They took it with them?
>
> A. They took it with them.
>
> Q. And when you bailed Veronica out, did you get the camera back?
>
> A. Yes, we got the camera back but it was in pieces when we got it back.
>
> Q. Was anything missing?
>
> A. The batteries and the memory card that was in the camera was gone.

See Deposition of Ernest Elphage attached hereto as Exhibit "1" at pp. 53-55.

Veronica Elphage also testified to the same facts in her deposition. See Deposition of Veronica Elphage attached to defendants' memorandum as Exhibit "4" at pp. 73-75. Carmenitha Kelson also testified in her deposition that Veronica was filming

the incident. See Deposition of Carmenitha Kelson attached to defendants' memorandum as Exhibit "6" at pp. 29-30.

    When Deputy James Gehling was deposed, he testified as follows:

```
Q.    Did you notice whether [Veronica Elphage] had a
      camera at any particular time?

A.    I remember a camera, yes.

Q.    And when did you notice that she had a camera?

A.    When I was handcuffing her.
```

See Deposition of Deputy James Gehling attached hereto as Exhibit "2" at page 27.

    He further stated:

```
Q.    George O'Connor directed you to place her under
      arrest?

A.    Yes.

Q.    And so you cuffed her and took her into custody;
      is that correct?

A.    Yes.

Q.    What happened to the camera at that time?

A.    I don't remember.  I know I gave – I came --
      I don't remember.

Q.    Did you take the camera from her.

A.    I did; I believe I did take it from her.  I don't
      remember if it – I don't remember if it fell or I
      don't remember how I got it from her, but I got
      the camera from her and gave it to Dpt. O'Connor.
```

Gehling Deposition, at page 29.

    Deputy Gehling further testified that he could have given the camera to a one of Veronica's family member's, but did not. In fact, he stated that releasing it to a family

member is not unusual. See Gehling Deposition, at page 31. Nonetheless, the camera was not released to a family member before it was returned damaged.

There is also a factual dispute regarding the conduct of Veronica Elphage that lead to her arrest. Defendants contend that Veronica Elphage began screaming and yelling at EBRSO deputies, refused to relent and continued to yell and curse at the deputies. Because of her confrontational, noncompliant and belligerent behavior, Deputy O'Connor and Deputy Gehling placed Veronica Elphage under arrest for public intimidation, resisting arrest by force, and simple assault. She jerked away when Deputy Gehling went to place her in handcuffs. Plaintiffs dispute the characterizations of Veronica Elphage's behavior within this statement and that she jerked away when placed into handcuffs. The deposition testimony of Carmenitha Kelson (attached to defendants' memorandum as exhibit 6) indicates at page 30 that Veronica Elphage was not yelling. Further, the deposition of Ernest Elphage attached hereto as Exhibit 1 indicates that Veronica was not yelling and was compliant. See pp. 33-36. It must be pointed out that Veronica Morgan heard nothing about the charges for which she was arrested until almost two years later.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

588, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the non-moving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta & Pine Land Co.*, 530 F.3d at 399.

Plaintiffs have alleged that the Veronica Elphage captured the events made the basis of this litigation on film. Plaintiffs contend that camera's memory card was in the camera when Deputy O'Conner had it in his possession. Plaintiffs, Veronica and Ernest Elphage further claim that the memory card was missing when it was returned to them. Accordingly, this case is a case in which the trier of fact should hear each party's testimony first-hand. Therefore, Summary Judgment should be denied.

        Respectfully submitted:

        /s/ <u>Jeffrey T. Greenberg</u>
        Jeffrey T. Greenberg (#23482)
        Jeffrey T. Greenberg , APLC
        421 Frenchmen Street, Suite 200
        New Orleans, Louisiana 70116
        (504) 944-1444, Fax: (504) 944-4306
        Jeff@Plazalaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on 10th day of August, 2012, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent by operation of the court's electronic filing system to the following:

>TARA L. JOHNSTON (#28100)
>MARY G. ERLINGSON (#19562)
>301 Main Street, Suite 2030
>Baton Rouge, LA 70825
>
>CRAWFORD LEWIS, P.L.L.C.
>450 Laurel Street, Suite 1600
>Post Office Box 3656
>Baton Rouge, Louisiana 70821-3656

I also certify that I have confirmed this date that there are no manual recipients identified to receive copies of this filing.

New Orleans, Louisiana this 10th day of August, 2012.

                                                           /s/Jeffrey T. Greenberg